UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TODD F.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. C19-5584 TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13.

I.     ISSUES FOR REVIEW

A.     Whether the ALJ erred in rejecting a functional capacity evaluation conducted by physical therapist Darin Swan, PT.

B.     Whether the ALJ erred in evaluating the opinions of non-examining physician Greg Saue, M.D.

C.     Whether the ALJ erred in rejecting Plaintiff's symptom testimony.

D.     Whether the ALJ erred in finding Plaintiff had no colorable claim of mental impairment at step two.

E. Whether the ALJ erred in assessing plaintiff's residual functional capacity ("RFC") and relying on that RFC at step five.

## II. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 404.1520. The ALJ assesses the claimant's RFC to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, to determine, at step five, whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings

offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009) (citations omitted).

### A.   The ALJ Harmfully Erred in Rejecting Mr. Swan's Functional Capacities Evaluation

On April 9, 2018, based on a referral from plaintiff's primary care provider, Mr. Swan performed a functional capacities evaluation. *See* AR 1540–42. Mr. Swan opined plaintiff had specific exertional, postural, and manipulative limitations, such as a restriction to occasional sitting and seldom standing. *See* AR 1541–42.

The ALJ rejected Mr. Swan's opinions. *See* AR 43. The Commissioner concedes the reasons the ALJ gave for this rejection were insufficient, but argues any error was harmless because Mr. Swan's opinion was dated after plaintiff's date last insured of December 31, 2017. *See* Def. Resp. Br. (Dkt. # 20) at 3–4.

The ALJ harmfully erred in rejecting Mr. Swan's opinions. "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (citations omitted). The ALJ made no finding that plaintiff's condition worsened after his date last insured, so any determination that Mr. Swan's opinions were irrelevant to the disability period at issue would be an improper *post hoc* rationalization. *See Bray*, 554 F.3d at 1225–26. The ALJ thus harmfully erred in rejecting Mr. Swan's opinions.

### B.   The ALJ Did Not Harmfully Err in Rejecting Dr. Saue's Opinions

Dr. Saue evaluated plaintiff's alleged disability as part of the Social Security Administration's initial review of plaintiff's claims. *See* AR 95–97. Dr. Saue opined plaintiff's "statements about the intensity, persistence, and functionally limiting effects of

1  [his] symptoms [were] substantiated by the objective medical evidence." AR 95–96. He
2  further opined plaintiff had the RFC to lift 20 pounds occasionally and 10 pounds
3  frequently, stand and/or walk for about six hours in an eight-hour workday, and sit for
4  about six hours in an eight-hour workday. AR 96. Dr. Saue opined plaintiff had
5  additional postural and environmental limitations. AR 96–97.
6        The ALJ gave Dr. Saue's opinions "significant to great weight." AR 43. The ALJ
7  noted, however, that plaintiff underwent another surgery after Dr. Saue issued his
8  opinions, "which further limits [plaintiff] such that he now needs a sit or stand option
9  based on his ongoing subjective complaints." *Id.*
10       Plaintiff contends the ALJ implicitly rejected Dr. Saue's opinion that plaintiff's
11 subjective statements about the intensity, persistence and limiting effects of his
12 symptoms were supported by the objective medical evidence. Pl. Op. Br. (Dkt. #15) at
13 8–9. First, the ALJ—not Dr. Saue—is responsible for evaluating the reliability of
14 plaintiff's statements. *See Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (citing
15 *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Second, the more specific
16 parts of Dr. Saue's opinion show he did not fully accept plaintiff's statements. For
17 example, plaintiff testified he could sit or stand for a maximum of about 10 to 15
18 minutes, whereas Dr. Saue opined plaintiff could sit or stand for six hours in an eight-
19 hour workday. AR 70, 96. The ALJ is responsible for interpreting the evidence, and did
20 not err in accepting Dr. Saue's specific limitations as his opinion rather than the general
21 determination that plaintiff's statements were supported by the objective medical
22 evidence. *See Ford*, 950 F.3d at 1149 (citing *Andrews*, 53 F.3d at 1039). The ALJ thus
23 did not harmfully err in evaluating Dr. Saue's opinions.
24
25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

**C.     The ALJ Harmfully Erred in Rejecting Plaintiff's testimony**

In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Plaintiff testified he has difficulty sitting, standing, and walking due to back pain and shortness of breath. *See* AR 70, 72, 205, 211. He testified he could lift 20 pounds, but not all day long. AR 73. Plaintiff testified he participated in physical therapy but stopped when he was told it was not helping. AR 73, 77–78, 243. Plaintiff testified he has some difficulty maintaining concentration and focusing due to the medications he takes. AR 81–82, 211. Plaintiff testified his most recent surgery did not help his pain, but made it worse. AR 83.

The ALJ found plaintiff's medically determinable impairments could cause the symptoms he alleged. *See* AR 37. But the ALJ found plaintiff's statements regarding the severity of his symptoms were not fully consistent with the medical and other evidence in the record. *See id.*

The ALJ erred in rejecting plaintiff's testimony as inconsistent with what the ALJ considered "minimal objective medical findings." AR 37. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v.*

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 5

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the claimant's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support his conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

     Plaintiff had surgery on his back at L4/L5 and L5/S1 in January 2015. *See* AR 310–13. Records then document only three appointments between that surgery and April 2016, all of which indicate plaintiff was doing reasonably well. *See* AR 320, 323, 1721. But the medical record documented a return of symptoms by April 2016. *See* AR 314–17. Plaintiff regularly reported pain and showed restricted range of motion. *See* AR 373–74, 431, 437, 449. In February 2017, an MRI revealed a number of issues at L3/L4. *See* AR 1475–76. Plaintiff received at least two injections to treat his back pain, but continued to report symptoms throughout 2017. *See* AR 977, 983, 1148–49, 1249–50, 1467, 1459–63, 1705, 1708. In January 2018, plaintiff underwent another back surgery, this time addressing L3/L4. *See* AR 1379–80, 1384. Plaintiff reported no relief, and demonstrated objective symptoms such as an asymmetric sitting position and lumbar tenderness. *See* AR 1488, 1503, 1519, 1540–42, 1628–30, 1687.

     The ALJ reasonably interpreted this evidence when he noted plaintiff had a period of over a year after the January 2015 surgery with improvement in his symptoms. *See* AR 37–38. But the ALJ unreasonably interpreted the medical evidence regarding the remainder of the alleged disability period, as the record shows objective low back


conditions that could support plaintiff's testimony regarding the severity of his symptoms. Plaintiff received at least two steroid injections and underwent another surgery. The ALJ's summary of the evidence does not accurately paraphrase its content, and does not show a true contradiction with plaintiff's testimony that would support its wholesale rejection. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record").

The ALJ unreasonably interpreted the record in rejecting plaintiff's testimony based on an alleged failure to follow through with treatment recommendations such as physical therapy and weight loss. *See* AR 40. The ALJ noted one provider in November 2016 felt plaintiff needed reconditioning, but failed to note this provider also indicated plaintiff had no insurance. *See* AR 40, 375.

The ALJ noted plaintiff requested a home exercise routine rather than in-person physical therapy in November 2016, but failed to show this constituted an actual failure to comply with treatment. *See* AR 40, 450. In another instance, the ALJ noted a provider in March 2018—about two months removed from his second back surgery—recommended plaintiff follow up with physical therapy and see a pain specialist. *See* AR 40, 1502. The ALJ failed to acknowledge, however, that plaintiff did follow up with a physical therapist, and was given exercises to perform at home until a recheck six weeks later. *See* AR 1557.

Finally, the ALJ suggested plaintiff was advised to lose weight, but failed to do so. *See* AR 40, 1714. Failure to lose weight is not a valid reason to reject a claimant's

testimony. *See Orn v. Astrue*, 495 F.3d 625, 637 (9th Cir. 2007) (finding error where the ALJ rejected the claimant's symptom testimony based on failure to lose weight).

In sum, the ALJ did not reasonably evaluate the medical evidence. His rejection of plaintiff's testimony was not based on substantial evidence, and the ALJ thus erred.

### D. The ALJ Did Not Harmfully Err at Step Two in Evaluating Whether Plaintiff Has Any Severe Mental Impairments

Plaintiff contends the ALJ erred by failing to apply the psychiatric review technique set forth in 20 C.F.R. § 404.1520a to assess plaintiff's mental impairments at step two. Pl. Op. Br. at 9–10. At step two, the claimant has the burden to show he has a medically determinable impairment that is severe. *See Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001). An impairment is medically determinable only when its existence can be shown through objective medical evidence such as laboratory findings and tests done using acceptable clinical diagnostic techniques. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing Social Security Ruling ("SSR") 96–4p, 1996 WL 374187, at *1 (July 2, 1996)). "'[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.'" *Ukolov*, 420 F.3d at 1005 (quoting SSR 96–4p, 1996 WL 374187, at *1–2).

Plaintiff has failed to meet his burden of showing a medically determinable mental impairment at step two. Plaintiff did not allege that he suffered any mental impairments. *See* AR 65–83, 92, 185. And plaintiff has not pointed to substantial evidence showing he suffers from a diagnosed mental impairment. All but one of the

clinical tests to which plaintiff cites indicate he had no significant depression and anxiety. *See* AR 435, 493, 555, 1155, 1219, 1296.

As to chronic pain syndrome, plaintiff points to no records showing any associated mental health symptoms with that diagnosis. In fact, many of the records to which plaintiff cites noted a normal psychiatric exam despite the chronic pain syndrome diagnosis. *See* AR 437, 1248, 1265, 1311. Plaintiff suggests the ALJ had a duty to "explore possible psychological sources of [plaintiff's] chronic pain or psychological interactions with chronic pain, creating a syndrome." Pl. Op. Br. at 10. The ALJ had no such duty because there was no ambiguity in the record that needed to be investigated. *See Coleman*, 524 F. App'x at 326 (citing *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)).

Because plaintiff failed to establish a colorable claim of a medically determinable impairment, the ALJ had no duty to apply the psychiatric review technique from 20 C.F.R. § 404.1520a. The ALJ therefore did not harmfully err at step two.

### E. The ALJ Harmfully Erred in Assessing Plaintiff's RFC And Relying on That Assessment at Step Five

Plaintiff argues the ALJ erred in assessing plaintiff's RFC, and by basing his step five findings on that RFC assessment. Pl. Op. Br. at 14. This argument is derivative of plaintiff's other arguments, as it is based on the contention the failed to include limitations in the RFC and hypothetical questions to the vocational expert that were established by the evidence the ALJ erroneously rejected. *See id.* Because the Court has found the ALJ erred in evaluating Mr. Swan's evaluation and plaintiff's testimony, plaintiff's argument succeeds. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (holding ALJ's RFC assessment and step five determination were not

1  supported by substantial evidence where the RFC and hypotheticals to vocational
2  expert failed to include all the claimant's impairments).

### F. Remand with Instructions for Further Proceedings

Plaintiff asks the Court to remand this matter for an award of benefits. Pl. Op. Br. at 14–15. "'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the Court concludes additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Leon*, 880 F.3d at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within

the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The appropriate remedy here is to remand for further administrative proceedings. There are conflicts in the record, such as among Dr. Swan's evaluation, Dr. Saue's opinions, and plaintiff's testimony. *See* AR 70, 72, 96–97, 205, 211, 1541–42.

Similarly, there are questions about the disability onset date. *See* AR 37–38, 320, 323, 1721. "[W]here a record is lacking and ambiguous as to the onset date of disability, 'the ALJ must call a medical expert to assist in determining the onset date.'" *Diedrich v. Berryhill,* 874 F.3d 634, 638 (9th Cir. 2017) (quoting *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 587, 590 (9th Cir. 1998)). Particularly in cases where the condition causes the claimant to suffer inconsistent yet increasingly severe symptoms over the course of years, an accurate determination of the onset date may require an independent assessment by a medical expert. *Diedrich,* at 639-640. The ALJ must resolve these conflicts and ambiguities.

On remand, the ALJ shall reevaluate Mr. Swan's evaluation and plaintiff's symptom testimony. The ALJ shall reassess plaintiff's RFC, and reevaluate step five of the disability evaluation process. The ALJ shall conduct all further proceedings necessary to accurately determine the date of onset, and reevaluate the disability determination in light of this opinion.

III. <u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ erred when he determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 2nd day of September, 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge